UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>WILLIAM UNDERWOOD,<br>Defendant. | 88-Cr-822 (SHS)<br><br>OPINION & ORDER |

SIDNEY H. STEIN, U.S. District Judge.

    Over thirty years ago, defendant William Underwood was sentenced to life incarceration without the possibility of parole for his role as the leader of a violent heroin-trafficking organization operating throughout New York City. He now moves to reduce his sentence to time served pursuant to the compassionate-release statute, 18 U.S.C. § 3582(c)(1)(A). (Def.'s Mot., ECF No. 185; *see also* Def.'s Mem., ECF No. 186.) The government opposes Underwood's request. (Gov't Opp'n, ECF No. 191.) On January 5, 2021, Underwood—now 67 years old—tested positive for COVID-19, and he is currently quarantining in a shared cell at FCI Fairton in New Jersey. In light of defendant's exceptional record of rehabilitation and service over his three decades in federal custody, as well as the particularized dangers posed to him by contracting the novel coronavirus, the Court finds that "extraordinary and compelling reasons" exist for a sentence reduction. Because the Court further finds that a sentence reduction is consistent with the factors set forth in 18 U.S.C. § 3553(a) and the policy statements of the U.S. Sentencing Commission, defendant's motion is granted.

**I.   BACKGROUND**

    In the early 1970s, defendant Underwood organized "the Vigilantes," a street-level heroin-distribution operation based in West Harlem. (Presentence Investigation Report (PSR) ¶ 11.) Over the next decade, the Vigilantes grew under Underwood's leadership, forming retail operations across New York City, importing heroin, and consigning wholesale quantities of heroin to other distributors. (*Id.* ¶¶ 11, 14.) The organization sold between 3 and 5.5 kilograms of heroin per week, and at least 40 individuals were identified as participants in Underwood's criminal enterprise over the course of its operation. (*Id.* ¶¶ 12, 21, 30.) The Vigilantes, moreover, were "extremely violent." *United States v. Underwood*, 932 F.2d 1049, 1051 (2d Cir. 1991). The group was responsible for at least five murders, and one attempted murder, committed at Underwood's direction. (PSR ¶¶ 33-44.) These murders were brutal and calculated, aimed specifically at

"eliminating and intimidating competitors, informants, and actual or potential witnesses." (*Id.* ¶ 11.)

In 1988—approximately 33 years ago—Underwood was arrested and charged with various crimes arising from his leadership of the Vigilantes. He has been continuously incarcerated since that time. In 1990, after a jury trial before Judge Miriam Cedarbaum, Underwood was convicted of (1) conducting or participating in a racketeering enterprise ("RICO"), in violation of 18 U.S.C. §§ 1961 and 1962(c); (2) RICO conspiracy, in violation of 18 U.S.C. §§ 1962 and 1963; (3) narcotics conspiracy, in violation of 21 U.S.C. § 846; and (4) participating in a continuing criminal enterprise ("CCE"), in violation of 21 U.S.C. § 848. (PSR ¶¶ 5-8.) At sentencing, the Court found that because Underwood's criminal activity continued beyond November 1, 1987—the effective date of the U.S. Sentencing Guidelines promulgated pursuant to the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987 (1984)—the new guideline ranges applied. *See United States v. Story*, 891 F.2d 988, 991 (2d Cir. 1989). Though Underwood's first three counts of conviction carried statutory maximum sentences of twenty years, his CCE conviction carried a minimum sentence of twenty years and a maximum sentence of life. Due largely to Underwood's role in the murders described above, the Sentencing Guidelines required that Judge Cedarbaum impose a sentence of life imprisonment.[1] Accordingly, on June 12, 1990, Judge Cedarbaum imposed a sentence of life incarceration without the possibility of parole. (*See* Sentencing Tr. at 24:2-25:1, Def.'s Mem. Ex. R, ECF No. 186-18.) Underwood's conviction and sentence were affirmed on appeal on May 9, 1991. *See Underwood*, 932 F.2d 1049.

Underwood, currently 67 years old and in the thirty-third year of his sentence, has now spent half his life in federal prison. The difference between these two halves could not be more pronounced. As discussed below, Underwood has by all accounts been a manifestly model inmate, a mentor to countless young men in custody, and an active and devoted father and grandfather, all while under the specter of a life-without-parole sentence. His positive influence on younger inmates has caught the attention of Third Circuit Judge Theodore McKee, who wrote Underwood in 2019 to thank him for "making a difference in the li[v]es of people around you" (McKee Letter at 1, Def.'s Mem. Ex. O, ECF No. 186-15), and Senator Cory Booker, who has advocated for Underwood's release since meeting him at FCI Fairton in 2016. (Def.'s Mem. at 14.)

Over the years, Underwood sought various forms of post-conviction relief without success, including a 2015 petition to the U.S. Department of Justice's Office of the

---

[1] Although the Sentencing Guidelines were subsequently rendered advisory in *Booker v. United States*, 543 U.S. 220 (2005), *Booker* does not apply retroactively to sentences that were final before the case was decided. See *Green v. United States*, 397 F.3d 101, 103 (2d Cir. 2005); *Guzman v. United States*, 404 F.3d 139, 144 (2d Cir. 2005).

Pardon Attorney for a sentence commutation. (Commutation Pet., Def.'s Mem. Ex. P, ECF No. 186-16.) Then, in 2018, Congress enacted the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018), allowing a defendant to seek a sentence reduction directly in the district court if "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf." *Id.* § 603(b), 132 Stat. at 5239. In July 2019, Underwood filed a request for a sentence reduction motion with the warden of FCI Fairton. This request was denied a few days later. (BOP Mot. at 8-16, Def.'s Mem. Ex. S, ECF No. 186-19.) On May 12, 2020, after defendant's further administrative appeals were denied, he filed a motion for a sentence reduction in this Court. (Def.'s Mem. at 10.)

## II. DISCUSSION

Defendant brings his claim for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A), often referred to as the "compassionate release" statute. As noted above, the First Step Act permits this Court to consider a defendant's compassionate-release motion only after he has exhausted his administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Because the government argues that Underwood has failed to do so, the Court must first briefly address this "procedural requirement" before turning to the merits. *See United States v. Torres*, 464 F. Supp. 3d 651, 654 (S.D.N.Y. 2020).

### 1. Underwood Has Exhausted His Administrative Remedies

The government concedes that Underwood exhausted his administrative remedies with regard to his initial petition to the FCI Fairton warden. (*See* Gov't Opp'n at 14.) However, the government alleges that because Underwood's petition only sought release "on the basis of his alleged rehabilitation and because he might not have received a life sentence under current law," and did not "assert the COVID-19 pandemic as a basis for compassionate release," Underwood has exhausted his remedies only as to the former issues, and not as to his COVID-19 claims. (*Id.*) Faced with the same argument in *Torres*, this Court held, as a matter of first impression in this district, that such "issue exhaustion is not required" before a defendant may raise an argument in his compassionate-release motion. *Id.* at 655-57. Because the government concedes that Underwood did exhaust his remedies with regard to his initial administrative petition, and because this Court has held that a defendant need not "have exhausted every *issue*—including the COVID-19 pandemic—raised in the motion," *id.* at 655, the Court "may thus consider the full merits" of defendant's request, *id.* at 657.

### 2. A Sentence Reduction is Warranted

The compassionate-release statute carves out one of the "few narrow exceptions," *Freeman v. United States*, 564 U.S. 522, 527 (2011), to the general rule that a court "may

3

not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). By its terms, the compassionate-release statute allows a court to order a sentence reduction only after three requirements are met. *See Torres*, 464 F. Supp. 3d at 658. First, the defendant must demonstrate "extraordinary and compelling reasons" warranting a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). Next, the court must consider a reduction in light of "the factors set forth in section 3553(a)." *Id.* § 3582(c)(1)(A). And finally, the court must find that a reduction is "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* Underwood urges that his "transformation and development while incarcerated," in conjunction with the "ongoing COVID-19 crisis"—and his current positive COVID-19 diagnosis— meet these criteria and merit his release from more than three decades of incarceration. (*See* Def.'s Mem. at 1; Def.'s Letter at 1-2, ECF No. 205.) For the reasons set forth below, the Court agrees.

### 1. *Extraordinary and Compelling Reasons Support a Sentence Reduction*

The compassionate-release statute does not define "extraordinary and compelling reasons." Moreover, though Congress has long directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction," 28 U.S.C. § 994(t), the U.S. Court of Appeals for the Second Circuit recently recognized that the First Step Act "freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020); *see also id.* ("[A] district court's discretion in this area—as in all sentencing matters—is broad.")

Exercising this discretion, the Court now finds that Underwood has demonstrated extraordinary and compelling reasons meriting his release. Two factors interact to support this finding.

First, and most importantly, Underwood indeed appears to have "transformed himself into a model prisoner, father, and American citizen." (Def.'s Mem. at 13.) In 33 years of incarceration, Underwood has not received a single disciplinary infraction, which in this Court's experience is most extraordinary. In addition, a resounding chorus of letters of support attests to his character and integrity. Underwood presents strong evidence that he has been fully rehabilitated.

In response, the government points to Congress's directive that "[r]ehabilitation of the defendant *alone* shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t) (emphasis added). However, the government's claim that this provision "bar[s] Underwood's rehabilitation argument as a matter of law" is incorrect. (Gov't Opp'n at 10.) As the *Brooker* panel clarified, though a claim for compassionate release cannot rely "*solely* on . . . rehabilitation," evidence of rehabilitation may certainly contribute to a showing of extraordinary and compelling circumstances. *Brooker*, 976

4

F.3d at 238; *see also Torres*, 464 F. Supp. 3d at 661; *United States v. Millan*, No. 91-Cr-685 (LAP), 2020 WL 1674058, at *7 (S.D.N.Y. Apr. 6, 2020). And as *Brooker* further recognized, rehabilitation "may also interact with the present coronavirus pandemic" to create extraordinary and compelling circumstances. *Brooker*, 976 F.3d at 238; *United States v. Rodriguez*, No. 00-Cr-761 (JSR), 2020 WL 5810161, at *4 (S.D.N.Y. Sept. 30, 2020).

As set forth below, this interaction between rehabilitation and the pandemic is particularly relevant to Underwood, who is currently quarantining with an active case of COVID-19. On a more fundamental level, however, Underwood's behavior in prison "exceed[s] the bounds of what we consider 'rehabilitation.'" *Torres*, 464 F. Supp. 3d at 663. "In ordinary parlance, 'rehabilitation' is defined as '[t]he process of seeking to improve a criminal's character and outlook so that he or she can function in society without committing other crimes.'" *Id.* (quoting *Rehabilitation, Black's Law Dictionary* (11th ed. 2019)); *see also Mistretta v. United States*, 488 U.S. 361, 363 (1989) (defining the goal of rehabilitation as "to minimize the risk that [a defendant] would resume criminal activity upon his return to society."). Underwood, meanwhile, "has used his . . . years in prison not just to better himself but also to better his community." *Rodriguez*, 2020 WL 5810161, at *4. It is this pattern of meaningful, positive influence on those around him that rises above "rehabilitation . . . *alone*" and comprises an extraordinary and compelling reason for early release.

Attached to Underwood's motion are more than three dozen detailed letters in support of his release. Several of these are from former inmates whom Underwood mentored, and they speak in one voice as to the influence he exerts on young prisoners. To quote from two of them:

> Family is something I never really had and I was very lost starting a 10-year [prison term] at 25 years old. . . . Then, I met Mr. Underwood and he became a father to me. . . . I became his son, one of his sons that he saved. . . . He saved my life. He would sit me down and lecture me about my thoughts. He would challenge me about what's between my ears. He made me a man. He made me understand nothing else matters in this world if you aren't around family and if you do not have one, then you should build one and hold it down. I was released from federal prison in December 2013 and I left my dear friend.

(Wright Letter at 1, Def.'s Mem. Ex. M, ECF No. 186-13.)

> The closer we became, the more I learned from him. I watched him mentor other young men in prison and it was a well known fact and still is that when you speak to Mr. Underwood and are around him, "no nonsense is allowed!" This brings about a culture of responsibility of all the men that he comes into contact with and I can attest that not only other prisoners respect each other, but respect the staff there as well. In turn the staff respects the prisoners.

(Brown Letter at 1, Def.'s Mem. Ex. L, ECF No. 186-12.)

These letters speak not only to the profound personal impact Underwood had on fellow prisoners, but also to the "culture of responsibility" he created in prison. Moreover, Underwood practices what he preaches: As noted above, he has not received a single disciplinary infraction in 33 years—an impressive achievement, when infractions may be issued for matters as small as "a messy cell." *See Torres*, 464 F. Supp. 3d at 662. He has completed countless educational and vocational courses, and has maintained consistent employment across his time in at least eight different federal facilities. (Institutional R., Def.'s Mem. Ex. F, ECF No. 186-6.) He has further embodied this "culture of responsibility" by promoting victims' rights, establishing what was apparently the first prisoner-run Victims' Awareness Program in maximum-security prison. (Def.'s Mem. at 4.)

Underwood's selfless mentorship over decades, despite no realistic hope of release from incarceration, caught the attention of Third Circuit Judge Theodore McKee, who wrote Underwood to thank him personally in 2019. After learning about Underwood from former inmate Naim Shakir during a court-run reentry program, McKee wrote:

> [Shakir] has told me of what an incredible mentor you were to him during his time incarcerated with you . . . . From what Naim has told me, his successful reentry into the community is a success in large part because of your efforts and caring. . . . I want you to know that you are making a difference in the li[v]es of people around you and you are reaching outside the prison every time one of your mentees rejoins his family and community.

(McKee Letter, Def.'s Mem. Ex. O, ECF No. 186-15.)

Indeed, it does appear from these letters that Underwood has devoted his time in prison to rehabilitation—"[t]he process of seeking to improve a criminal's character and outlook so that he or she can function in society without committing other crimes." *Torres*, 464 F. Supp. 3d at 663. What is "extraordinary and compelling" is the extent to which this devotion has focused on the rehabilitation of others, and not merely himself.

Moreover, and perhaps most importantly, Underwood has undertaken these mentorship responsibilities while maintaining an active, positive presence in the lives of his four children and three grandchildren. Letters of support from his two sons and two daughters demonstrate his integral role in raising and supporting his children, despite his spending a majority of their lives in federal custody.

Anthony, his oldest, writes: "My father was and still is my best friend. In the 32 years he has been incarcerated, he has never stopped being a father and a mentor." (Anthony Underwood Letter, Def.'s Mem. Ex. B, ECF No. 186-2.) Ebony writes that her father calls her almost every day, that he "sends birthday cards, Valentine's Day cards,

Mother's Day cards, and Christmas Cards," and that he has "developed and maintained a solid connection with his grandchildren despite never once meeting them outside prison walls." (Ebony Underwood Letter, Def.'s Mem. Ex. C, ECF No. 186-3.)

Mikole describes Underwood as "the anchor that has held our family together," and says that "[h]e has always been my guiding light." (Mikole Underwood Letter, Def.'s Mem. Ex. D, ECF No. 186-4.) She writes: "Even when I was faced with becoming a single mom, he ensured that he would support whatever decision I would make around motherhood. 21 years later, my son, his eldest grandson, who has only experienced his grandfather behind bars, adores him. . . . They speak all the time—my son experiences him as more than a Grandfather, but as a second father." (*Id.*)

Justin, his youngest, who was only five years old when his father was incarcerated, describes Underwood as "the most positive influence in my life." He writes:. "[N]o matter what I faced, he has always given me perspective and wisdom. . . . I know I can always ask for his opinion and it will be direct. I now have become a hardworking, positive member of my community and society. I have him to thank for it." (Justin Underwood Letter, Def.'s Mem. Ex. E, ECF No. 186-5.)

Considering the strain that incarceration—particularly life incarceration without parole—often places on paternal relationships, Underwood's clear positive influence on each of his children bears particular emphasis. As adults, his four children maintain diverse, successful careers, and their father's mentorship and guidance has most certainly been a significant factor in their lives.

In light of Underwood's exemplary record over last three decades; his consequential mentorship of young men and contribution to a "culture of responsibility" in federal prison; and his commendable efforts in raising and supporting his children and grandchildren from behind bars, the Court finds that "[b]y any measure, [Underwood's] good deeds exceed the bounds of what we consider 'rehabilitation'" and amount to extraordinary and compelling reasons meriting a sentence reduction. *Torres*. 464 F. Supp. 3d at 663.

Although Underwood would likely merit a sentence reduction under normal circumstances, a second factor further bolsters defendant's claim to extraordinary and compelling reasons. Though less weighty, this second factor is perhaps more pressing: On January 5, Underwood tested positive for COVID-19, and he is currently under quarantine in a shared cell at FCI Fairton. (*See* Counsel's Letter at 1, ECF No. 205.) As many judges have recognized, "the COVID-19 pandemic presents an extraordinary and unprecedented threat to incarcerated individuals." *United States v. Scparta*, No. 18-Cr-578 (AJN), 2020 WL 1910481, at *9 (S.D.N.Y. Apr. 20, 2020); *see also United States v. Nkanga*, No. 18-Cr-713 (JMF), 450 F. Supp. 3d 491, 491–92 (S.D.N.Y. Mar. 31, 2020); *United States v. McKenzie*, No. 18-Cr-834 (PAE), 450 F. Supp. 3d 449, 452–53 (S.D.N.Y.

7

Mar. 30, 2020). And though "numerous courts," including this Court, "have found that the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release . . . additional factors such as advanced age or serious underlying health conditions" may contribute to such a showing. *United States v. Nwankwo*, No. 12-Cr-31 (VM), 2020 WL 2490044, at *1 (S.D.N.Y. May 14, 2020); *see also United States v. Davis*, No. 12-Cr-712 (SHS), 2020 WL 4573029, at *1 (S.D.N.Y. Aug. 7, 2020).

As noted above, Underwood is 67 years old, which places him squarely in the Center for Disease Control and Prevention's high-risk age group for COVID-19 complications and death. *See Older Adults*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last updated Dec. 13, 2020) (indicating that 8 out of 10 COVID-19 deaths reported have been in adults age 65 or older). Moreover, unlike the defendants in the cases cited above—for whom the "risks posed by the pandemic" were merely the speculative risks of potential infection—Underwood is currently infected with COVID-19. The risks posed to him by the virus are thus at their highest ebb, and his case for this Court's recognition of the pandemic's "extraordinary and unprecedented threat to incarcerated individuals" is accordingly at its strongest. *Scparta*, 2020 WL 1910481, at *9.

Underwood's positive COVID-19 status would likely not, on its own, be sufficient to merit a sentence reduction. However, considered in the context of Underwood's already-persuasive case for compassionate release, his COVID-19 diagnosis further bolsters the Court's finding that extraordinary and compelling reasons exist. *See Brooker*, 976 F.3d at 238.

### 3. **The Section 3553(a) Factors Favor a Sentence Reduction**

After finding that extraordinary and compelling reasons exist for a reduction, the Court must next "consider the Section 3553(a) factors to the extent they are applicable," 18 U.S.C. § 3582(c)(1)(A), and determine whether, in light of these factors, the "extraordinary and compelling reasons warrant such a reduction." *Id.* § 3582(c)(1)(A)(i).

18 U.S.C. § 3553(a) instructs that, in "impos[ing] a sentence sufficient, but not greater than necessary," a court must consider, among other factors, "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need for the sentence to facilitate such matters as deterrence, incapacitation, and rehabilitation. 18 U.S.C. §§ 3553(a)(1)-(2).

For many of the reasons described above in detail, the section 3553(a) factors weigh in favor of a reduction here. Regarding "the nature and circumstances of the offense and the history and characteristics of the defendant," the government correctly points out that Underwood's crimes were serious and violent. The defendant does not dispute that. (Def.'s Mem at 11.) However, as the foregoing discussion amply demonstrates, Underwood's "history and characteristics" did not freeze on the day of his arrest and

incapacitation. The Court is mindful of the Supreme Court's observation that "evidence of postsentencing rehabilitation may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider," including, "plainly[,] 'the history and characteristics of the defendant.'" *Pepper v. United States*, 562 U.S. 476, 491 (2011); *see also United States v. Phillips*, 469 F. Supp. 3d 180, 183 (S.D.N.Y. 2020). This Court has found that Underwood's post-sentencing history and present-day characteristics present abundant evidence of full rehabilitation, as evidenced by his spotless record, significant mentorship of young prisoners, and devoted parenting. In the context of this uncommon growth and rehabilitation, the Court further finds that his sentence of 33 years' incarceration has adequately "afford[ed] . . . deterrence," 18 U.S.C. § 3553(a)(2)(B), and has constituted a sentence sufficient to meet the aims of the criminal justice system. *Cf. Rodriguez*, 2020 WL 5810161, at *7.

Moreover, as acutely relevant here, section 3553(a) directs the Court to consider "the need for the sentence imposed . . . to provide the defendant with needed . . . medical care . . . in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). His current COVID-19 diagnosis weighs in favor of allowing him to pursue medical care from home with the support of his family.

### 4. A Sentence Reduction Is Consistent with the Sentencing Commission's Policy Statements

Finally, the compassionate-release statute requires the Court to consider whether a reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The relevant U.S. Sentencing Commission policy statement adds only one substantive requirement: compassionate release may only be allowed if "[t]he defendant is not a danger to the safety of any other person or to the community." U.S. Sentencing Guidelines Manual § 1B1.13(2) (U.S. Sentencing Comm'n 2018); *see also* 18 U.S.C. § 3142(g).

At this juncture, it should be clear that the Court does not believe Underwood poses any danger whatsoever to any other person. Though Underwood's crimes were violent and calculated, he committed them half his lifetime ago. After more than three decades without an infraction for so much as an unkempt cell or speaking back to a prison employee—and in light of the various ways, limned above, that he has served the community he once endangered—Underwood now demonstrates that he is fit to reenter society and rejoin his family.

## III. CONCLUSION

For the reasons set forth above, Underwood's motion for a sentence reduction pursuant to 18 U.S.C. § 3583(c)(1)(A) is granted. The Court reduces Underwood's sentence to time served. It is further ordered that:

1. Underwood shall complete the mandatory quarantine period that he has begun at FCI Fairton, after which he shall be immediately released from custody.
2. Upon release from custody, Underwood shall be placed on supervised release for a term of two years with the following mandatory conditions: (a) The defendant shall not commit another federal, state, or local crime; (b) the defendant shall not illegally possess a controlled substance; (c) the defendant shall not possess a firearm, dangerous weapon, or destructive device; and (d) the defendant shall refrain from any unlawful use of a controlled substance. The mandatory drug testing requirement is suspended. In addition, the defendant shall comply with standard conditions (1) through (12).
3. Upon release from custody, Underwood shall not report directly to probation. Instead, he shall telephone United States Probation Officer Nieman at (646) 879-6443. He shall leave a message with his first and last name, a phone number where he may be reached, his date of birth, the name of the facility from which he was released, and the date on which he was released.

Dated:   New York, New York
         January 15, 2021

SO ORDERED

_____
SIDNEY H. STEIN
U.S.D.J.